J-S35012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID M. BUCKLEY, | |
| Appellant | No. 1747 MDA 2017 |

Appeal from the Judgment of Sentence Entered May 3, 2017
In the Court of Common Pleas of Centre County
Criminal Division at No(s):
CP-14-CR-0000265-2016
CP-14-CR-0000535-2015

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 20, 2018**

Appellant, David M. Buckley, appeals from the judgment of sentence of an aggregate term of 8-16 years' incarceration, imposed following his conviction at a non-jury trial for numerous counts of possession and distribution of child pornography.  After careful review, we vacate Appellant's judgment of sentence, in part, and remand for resentencing and further proceedings.

Due to the unique procedural history of this case, *infra*, the trial court failed to file a Pa.R.A.P. 1925(a) opinion addressing Appellant's claims.[1] Accordingly, we lack an official summary of the pertinent facts adduced at

_____

[1] However, the trial court did produce two opinions addressing pre-trial issues.

Appellant's non-jury trial. The Commonwealth provided a factual summary, which we provide purely for context, as follows:

> During an undercover investigation into the distribution of child pornography in June of 2013, a Pennsylvania State Police computer received a video depicting a nude prepubescent female. The video was sent from the Internet Protocol (IP) address of a computer identified with Appellant[,] David Buckley. N.T. 2/2/17 at 14, 20-24. The State Police sent this information to the Ferguson Township Police, who obtained search warrants for [Appellant]'s home and person in early January of 2014. **Id.** at 85-86. Pursuant to those warrants, police seized various items capable of storing digital data, including [Appellant]'s Apple iPhone and his Hewlett Packard laptop computer. **Id.** at 89, 91-92.
>
> When [Appellant] became aware that police were taking action to search his digital devices, he deleted approximately 15 items of child pornography from his laptop computer. [**Id.**] at 99. An eventual forensic analysis of [Appellant]'s computer revealed 1,523 photos and 33 videos of what were described as "child pornography" by Ferguson Township Police Detective Devon Moran. **Id.** at 83, 114. One such video depicted "a young female [who] ultimately goes from clothed to not clothed to playing with her vagina using her fingers and ultimately a red candle stick in which this individual, this female, inserts the candle into her vagina." **Id.** at 115. The forensic analysis additionally revealed that the Internet browser on [Appellant]'s computer had been used to conduct searches cast in terms ranging from "Russian pedo pics," "pedo 9, 10, 11-years-old," "kinder," "lolita," "Russian preteens," and "very young little girl porn." **Id.** 116-118. Such searches were run from April through November of 2013. **Id.** at 119.
>
> Detective Moran filed a criminal complaint on March 10, 2015, charging [Appellant] with two counts of Sexual Abuse of Children, 18 Pa.C.S. § 6312(d) (possession of child pornography) and a third count under subsection (c) of that same statute (dissemination of child pornography). When, purportedly, [Appellant] refused to plead guilty, the Centre County District Attorney added 40 counts of possession of child pornography at the preliminary hearing, [**id.**] at 137-138, followed by 1,508 counts in a second criminal complaint filed on January 24, 2016.

Defense counsel stipulated at [Appellant]'s February 2, 2017, bench trial that the images and videos found on [his] computer fell within the prohibitions of 18 Pa.C.S. § 6312. [*Id.*] at 129-132. The defense consisted, instead, of argument that another person was responsible for the images on [Appellant]'s computer. [*Id.*] at 149-150. The trial court, per the Honorable Jonathan Grine ("Judge Grine") rejected this defense and convicted [Appellant] of all counts in the two informations.

Commonwealth's Brief at 1-2.

On May 3, 2017, the trial court sentenced Appellant to an aggregate term of 8-16 years' incarceration. Appellant filed a timely post-sentence motion on May 15, 2017, which was initially addressed at a hearing held on August 10, 2017.[2] On September 20, 2017, Appellant filed an amended post-sentence motion to vacate his conviction and a request for a new trial, based on emerging evidence of inappropriate contacts between Judge Grine and the then District Attorney of Centre County, Stacy Parks Miller, Esq., that resulted in disciplinary board actions against both of them. Specifically, in a Letter of Counsel dated August 29, 2017, the Judicial Board concluded that Judge Grine committed several judicial conduct violations in his handling of criminal matters since the summer of 2014 due to his relationship with D.A. Miller. *See* Commonwealth of Pennsylvania Judicial Conduct Board Letter of Counsel,

---

[2] Just prior to the hearing, Appellant filed a motion for enlargement of time for the trial court to decide post-sentence motions, which the court granted by order dated August 28, 2017, extending the deadline from September 11, 2017 to October 10, 2017. At the August 10, 2017 hearing, the parties agreed to brief their post-sentence motion arguments. Appellant filed his post-sentence motion brief on August 30, 2017, and the Commonwealth filed its brief on September 22, 2017.

8/10/17, at 2-4. The Board also indicated that Judge Grine admitted to his misconduct. *Id.* at 4.

A hearing was scheduled for Appellant's amended post-sentence motion to be held on October 4, 2017. However, by order dated the same day as the scheduled hearing, the Honorable Thomas King Kistler, then President Judge of the Centre County Court of Common Pleas, ordered Appellant's case to proceed with a visiting judge due to Judge Grine's recusal from all non-DUI criminal matters. The Honorable Daniel Lee Howsware was appointed to preside over Appellant's case on October 18, 2017; however, Judge Howsware did not hold a hearing regarding Appellant's amended post-sentence motion.[3] Ultimately, Appellant's post-sentence motion and amended post-sentence motion were denied by operation of law on October 13, 2017.

Appellant filed a timely notice of appeal on November 9, 2017. Appellant then filed a Pa.R.A.P. 1925(b) statement on January 31, 2018, despite not being ordered by the trial court to do so. Judge Howsware filed a statement ostensibly pursuant to Rule 1925(a) on November 30, 2017; however, that statement addressed only the bail-pending-appeal issue, noting that the order denying bail set forth the reasons for that decision. No Rule 1925(a) opinion was filed in this case. We note that the trial court did file two opinions accompanying its orders denying Appellant's pre-trial motions.

_____

[3] On November 9, 2017, Judge Howsware did hold a hearing to consider Appellant's motion for bail pending appeal, which he denied the same day.

Appellant now presents the following questions for our review:

I.      Was the evidence produced by the Commonwealth at [Appellant]'s trial sufficient to establish he intentionally viewed or knowingly possessed child pornography?

II.     Were the verdicts against the weight of the evidence that [Appellant] intentionally viewed or knowingly possessed child pornography?

III.    Was the evidence produced by the Commonwealth at [Appellant]'s trial sufficient to establish he knowingly distributed or disseminated or unlawfully possessed for the purpose of distribution or dissemination child pornography?

IV.     Were the verdicts relating to the charges of distribution or dissemination of child pornography against the weight of the evidence?

V.      Did the lower court err in convicting and sentencing [Appellant] to consecutive sentences on two (2) counts of distribution or dissemination of child pornography?

VI.     Did the lower court err in denying [Appellant]'s pre-trial motions to suppress evidence obtained from Comcast on August 5, 2013 pursuant to a court order issued on July 31, 2013?

VII.    Did the lower court err in denying [Appellant]'s pre-trial motions to suppress evidence obtained as a result of the execution of search warrants on January 2, and 3, 2014?

VIII.   Did the trial court err in failing to disclose to [Appellant] his personal support relationship with the district attorney prior to presiding over [Appellant]'s non-jury trial, and failing to recuse himself from presiding over [Appellant]'s non-jury trial based upon that relationship?

IX.     Did the lower court ([H]on. Daniel L. Howsware, specially presiding) err in denying [Appellant] bail pending his appeal?

X.      Should [Appellant]'s convictions be vacated and the charges dismissed, or, in the alternative, should [Appellant]'s cases be remanded to the lower court for an evidentiary hearing on unresolved issues including those issues raised in his

amended post sentence motions based upon the trial court's personal support relationship with the district attorney?

Appellant's Brief at 4-5. For ease of disposition, we will address these claims out of the order in which they were presented.

### *Sufficiency of the Evidence*

We begin by addressing Appellant's sufficiency claims (I and III, *supra*). Our standard of review of sufficiency claims is well settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant was convicted of 1,549 counts of possession of child pornography, 18 Pa.C.S. § 6312(d) ("possession"), and two counts of disseminating child pornography, 18 Pa.C.S. § 6312(c) ("dissemination"). These crimes are defined as follows:

> **(c) Dissemination of photographs, videotapes, computer depictions and films.--**Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child

under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

**(d) Child pornography.--**Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S. § 6312(c)-(d).

Appellant's sufficiency claims are related. Appellant does not dispute that the discovered images and videos constitute child pornography. In fact, Appellant stipulated to this fact during his trial. *See* N.T., 2/2/17, at 132. Rather, the sole basis for Appellant's sufficiency challenges concerns his identity as the perpetrator of the possession and dissemination charges, despite the fact that the images and videos in question were discovered by Pennsylvania State Police ("PSP") on his personal computer (accounting for the 1,549 counts of possession), and based on their receipt of a video depicting child pornography from Appellant's IP address.

First, the Commonwealth concedes that it did not offer evidence at trial to support both counts of disseminating child pornography. *See* Commonwealth's Brief at 10-11. After a careful review of the record, we agree. The evidence adduced at trial established only one incident of the transmission of child pornography in June of 2013. *See* N.T. at 14, 20-24.

Second, with regard to the remaining count of dissemination, and the numerous counts of possession, there exists some conflicting evidence as to Appellant's identity as the perpetrator. The Commonwealth demonstrated

- 7 -

that the BitTorrent software used to download the pornography in question was installed on Appellant's computer on June 28, 2013, at 9:25 p.m. Appellant contends that this occurred at a time when he was at work, and while his houseguest/roommate, Vlad Karabash, had access to the computer. Moreover, Appellant contends that both his computer and personal cellphone (on which several searches for child pornography were discovered) were not secured with a password, thereby permitting anyone to access them. Appellant argues that whether he or Mr. Karabash downloaded that software constitutes "two equally reasonable and mutually inconsistent inferences" that can be drawn from the circumstances. Appellant's Brief at 24. Our Supreme Court has recognized that "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty." *Commonwealth v. Montalvo*, 986 A.2d 84, 99 (Pa. 2009) (quoting *Commonwealth v. Woong Knee New*, 47 A.2d 450, 468 (Pa. 1946)).

We reject Appellant's contention that the trial court was presented with equally reasonable inferences in this case. Mr. Karabash testified that he only lived with Appellant for a few months in late 2012, and that he left Appellant's apartment by January of 2013 (six months before the BitTorrent software was added to Appellant's computer), as he married his wife on January 21, 2013, and began living with her at that time. *See* N.T. at 169. Mr. Karabash also

- 8 -

specifically denied ever using Appellant's cell phone or computer to search for or view child pornography. *Id.* at 170. Appellant testified that he had never "intentionally or knowingly" downloaded child pornography. *Id.* at 247. Given the nature of the verdict, it is clear that that the trial court found Mr. Karabash's testimony credible, and Appellant's testimony not credible.

Thus, the evidence did not produce equally reasonable inferences regarding who possessed and, in one case, disseminated child pornography from Appellant's personal computer. It is undisputed that the images were found on Appellant's personal computer, and that police received a video from Appellant's IP address. While it is certainly *possible* that someone else used Appellant's computer to commit the crimes in question, that possibility is not an inference of equal merit to the likelihood that Appellant used his own computer for that purpose. This is true even if we cast aside the effect of the trial court's credibility determinations regarding Appellant's and Mr. Karabash's denials. Appellant's cell phone also contained evidence of searches for child pornography, a circumstance that corroborated his intentional possession of the contraband on his computer. Moreover, Appellant's alleged alibi for the downloading of the BitTorrent software is somewhat irrelevant, as it does not appear to have been alleged that he downloaded any or all of the at-issue images and videos at that time. In any event, the trial court's credibility determinations cannot be ignored in this context, as they necessarily affect the quality of the inferences made regarding who downloaded, viewed, and disseminated the child pornography at issue. Given

the confluence of circumstances in this case, we conclude that the evidence was sufficient to support Appellant's possession convictions and one conviction for dissemination.

### *Sentencing*

Next, Appellant complains that the trial court erred by sentencing him to consecutive terms of incarceration for his conviction for two counts of dissemination. As noted above, the evidence produced at trial could only sustain a single count of dissemination. Accordingly, we are compelled to vacate the corresponding sentence. However, because we conclude that such action will upset the sentencing scheme of the trial court, we hereby vacate Appellant's sentence in its entirety and remand for resentencing. **See Commonwealth v. Vanderlin**, 580 A.2d 820, 831 (Pa. Super. 1990) (stating that "if a trial court errs in its sentence for one count in a multi-count case, then all sentences for all counts will be vacated so that the court can re-structure its entire sentencing scheme") (quoting **Commonwealth v. Lezinsky**, 400 A.2d 184 (Pa. Super. 1979), *rev'd on other grounds*, **In Interest of Rodriquez**, 537 A.2d 854 (Pa. Super. 1988)).

### *Suppression*

Appellant's next several claims concern the trial court's denial of his motion to suppress evidence. Appellant first argues that the PSP lacked a sufficient legal basis to obtain a court order to search records from Comcast that identified him as the subscriber to the IP address from which the PSP received a video of child pornography. Second, Appellant contends that the

PSP lacked probable cause to obtain the January 2, 2014, and January 3, 2014 warrants to search his person, personal belongings, and residence. Third, Appellant argues that those warrants were premised upon stale information. Finally, Appellant claims that the January 3, 2014 warrant was overbroad in its scope.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super. 2012)).

The trial court summarized the events leading to the issuance of the July 31, 2013 court order as follows:

> On June 30, 2013, Corporal G.M. Goodyear ("Corporal Goodyear") of the Pennsylvania State Police's Southwest Computer Crime Unit was conducting an undercover investigation of the sharing of child pornography over the internet. Corporal Goodyear located a computer with an Internet Protocol address of 98.235.165.250 ("IP address"), which he determined was sharing files known to

contain child pornography through the BitTorrent peer-to-peer file sharing network. Due to the computer's BitTorrent client software being set to "seed" files, or in other words share and upload files, Corporal Goodyear was able to download a file from the IP address. Corporal Goodyear found a video within the downloaded file, and the video portrayed what appeared to be a pre-pubescent female dancing and disrobing to a state of complete undress. After viewing the contents of the video, Corporal Goodyear believed, based on his training and experience, that the video contained child pornography. Corporal Goodyear was able to determine through publicly available records that the IP address was assigned to the internet service provider Comcast …. Corporal Goodyear prepared a [c]ourt [o]rder for the IP address subscriber and billing information based upon the downloaded video from the IP address and the information that the IP address was assigned to Comcast. On July 31, 2013, the [c]ourt [o]rder was issued and served on Comcast. On August 5, 2013, Comcast provided [Appellant's] name and address as the subscriber information associated with the IP address.

Pretrial Opinion ("PTO1"), 2/24/16, at 1-2.

Appellant first argues that,

the application for the aforementioned [c]ourt [o]rder only alleged information that the holder of that address/account was in possession of constitutionally protection material. Furthermore, [Appellant] submits Cpl. Goodyear did not comply with the provisions of 18 Pa.C.S.[] Sections 5743(a)(1)(2), (b)(1)(i)(ii)(A)(B), (2)(i) and (ii), (c)(1), (2)(i)(ii)(iii)(iv), (3)(d) and (e). [Appellant] submits Cpl. Goodyear failed to show there were specific and articulable facts showing there were reasonable grounds to believe that the contents of a wire or electronic communication, or the records or the other information sought were relevant and material to an ongoing criminal investigation and the court issuing the court order requiring Comcast to disclose subscriber information to Cpl. Goodyear failed to make an independent determination as to whether there was a sufficient legal basis to issue the aforementioned court order.

Appellant's Brief at 39-40.

Appellant's initial suppression claim alleges that Corporal Goodyear

lacked a sufficient basis upon which to conclude that the video at issue was

actual child pornography rather than constitutionally protected content, such as virtual child pornography. Appellant's claim derives from **Ashcroft v. Free Speech Coalition** 535 U.S. 234 (2002). In that case, the United States Supreme Court held that, while the First Amendment does not protect the possession of child pornography, that caveat does not extend to virtual child pornography because, *inter alia*, "[v]irtual child pornography is not 'intrinsically related' to the sexual abuse of children." **Id.** at 250 (quoting **New York v. Ferber**, 458 U.S. 747, 759 (1982) (holding that a state interest in preventing the sexual exploitation and abuse of children constitutes a "compelling" state interest that justifies the limited curtailment of First Amendment rights because, *inter alia*, the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children")).

Thus, Appellant contends that Corporal Goodyear lacked sufficient knowledge to determine whether the video he viewed was depicting child pornography or virtual child pornography so as to justify probable cause to search records from Comcast to determine Appellant's connection to the suspect IP address. The trial court addressed this issue as follows:

> [Appellant] attempts to fashion an additional burden on probable cause in child pornography investigations, which amounts to a requirement of a definitive finding that an alleged minor in alleged child pornography is not only indeed an actual minor, but also a flesh and blood human being as opposed to a computer generated image. The [c]ourt refuses to accept [Appellant's] logic because said argument would create the absurd result of experienced child pornography investigators being required to track down and identify alleged child sexual abuse victims from anonymous

images and videos downloaded from the internet, before even being able to obtain the subscriber information related to a suspected IP address. This result would virtually demolish the Commonwealth's ability to curtail the creation and spread of child pornography, and thus would leave child sexual abuse victims effectively defenseless. Further, the [c]ourt relies upon the Superior Court's holding in *Commonwealth v. Robertson-Dewar*, which found the age element of the child pornography statute can be sufficiently established by the trier of fact's consideration of the outward physical appearance of an alleged minor. *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207 (Pa. Super. 2003), *appeal denied*, 839 A.2d 352 (Pa. 2003). If the age element can be established beyond a reasonable doubt by the trier of fact's observance of the alleged minor, then it logically follows that a law enforcement officer with relevant training and experience can reasonably find the subject of a sexually explicit video to be a minor for merely probable cause purposes.

Therefore, the evidence obtained by [c]ourt [o]rder dated July 31, 2013 will not be suppressed.

PTO1 at 7-8 (citation omitted).

We agree with the trial court's analysis. Appellant's reliance on the *Ashcroft* decision is misplaced, as that case did not involve the Fourth Amendment's probable cause standard. *Ashcroft* concerned the question of whether a *conviction*, based on the possession or dissemination of virtual child pornography, could stand in light of the First Amendment. It did not involve whether a warrant or other court order could issue on the basis of an officer's perception, grounded in his training and experience, that a particular image or video depicts real child pornography. Accordingly, we conclude that Appellant's first suppression claim lacks merit.

Next, Appellant argues that in seeking a court order to obtain his identity from Comcast, Corporal Goodyear did not comply with the mandates of the

Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701 *et. seq.* Appellant's argument, in its entirety, is as follows:

> [Appellant] submits Cpl. Goodyear did not comply with the provisions of 18 Pa.[]C.S.[] Sections 5743(a)(1)(2), (b)(1)(i)(ii)(A)(B), (2)(i) and (ii), (c)(1), (2)(i)(ii)(iii)(iv), (3)(d) and (e). [Appellant] submits Cpl. Goodyear failed to show there were specific and articulable facts showing there were reasonable grounds to believe that the contents of a wire or electronic communication, or the records or the other information sought were relevant and material to an ongoing criminal investigation and the court issuing the court order requiring Comcast to disclose subscriber information to Cpl. Goodyear failed to make an independent determination as to whether there was a sufficient legal basis to issue the aforementioned court order.

Appellant's Brief at 39-40.

Appellant does not provide this Court with any significant analysis of this multipart claim beyond what is reproduced above, where he alleges no less than eight separate violations of Section 5743. Indeed, some of these sub-claims are clearly baseless on their face as, for instance, subsection (c)(1) was deleted from the Criminal Code in 2008. Other portions of Appellant's argument are simply nonsensical in the circumstances of this case. Subsection (c)(2) requires a "provider of electronic communication service or remote computing service" to "disclose a record or other information pertaining to a subscriber to or customer of the service" if the investigative or law enforcement officer:

> (i) uses an administrative subpoena authorized by a statute or a grand jury subpoena;

> (ii) obtains a warrant issued under the Pennsylvania Rules of Criminal Procedure;

(iii) obtains a court order for the disclosure under subsection (d); or

(iv) has the consent of the subscriber or customer to the disclosure.

18 Pa.C.S. § 5743(c)(2). Here, there is no dispute that Corporal Goodyear obtained a court order pursuant to subsection (d). **See** Appellant's Brief at 37 (stating as fact that "[o]n July 31, 2013, a court order was prepared and served on Comcast by Cpl. Goodyear for subscriber information regarding the aforementioned IP address")

The only conceivable violation of Section 5743 that occurred here is whether that order was properly issued pursuant to subsection (d), which provides as follows:

> **(d) Requirements for court order.--**A court order for disclosure under subsection (b) or (c) shall be issued only if the investigative or law enforcement officer shows that there are *specific and articulable facts* showing that there are *reasonable grounds to believe* that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify the order if the information or records requested are unusually voluminous in nature or compliance with the order would otherwise cause an undue burden on the provider.

18 Pa.C.S. § 5743(d) (emphasis added). Section 5743(d) expresses a standard akin to probable cause.

Here, Corporal Goodyear was engaged into an ongoing investigation into the possession and distribution of child pornography when he sought the court order to reveal Appellant's association with the IP address under investigation. N.T. Suppression, 12/10/15, at 13. Using specialized software, Corporal

Goodyear searched for child pornography among users of the file-sharing platform, BitTorrent. *Id.* at 13-14. As Corporal Goodyear described it,

> in this particular case, the client software which was being used by [Appellant] actually connected to us, requesting files from us which depict child pornography. And what ended up happening in this particular software, we essentially sa[id], "Hey, you know what? Yeah, we've got the files, and we're going to share them," even though we don't, "But you know what? What do you have? You know, let me have what you have. You've got to give to get." So he then – his software connected with ours, provide the downloads which we actually ended up getting, and an investigation stemmed from there.

*Id.* at 16.

The video received from Appellant's account was described by Corporal Goodyear as portraying a "prepubescent girl" dancing and then undressing until "she is completely nude." *Id.* at 21. The girl continues to dance while "her breast, genital, and buttocks area are clearly visible at various points." *Id.* Corporal Goodyear classified the video as child pornography based on his training and experience. *Id.* Based on these observations, he sought a court order pursuant to Section 5743(d) to obtain Appellant's name based on his assigned IP address.

We conclude that Corporal Goodyear articulated facts that were sufficiently specific to establish that the contents of the video were relevant to his criminal investigation into child pornography. Moreover, we ascertain no other error pursuant to Section 5743 in the trial court's order denying suppression of the evidence of Appellant's identity seized pursuant to the July

31, 2013 court order. Accordingly, Appellant's suppression claims regarding that order lacks merit.

Next, Appellant contends that the trial court erred by failing to grant suppression of the fruits of the January 2, 2014, and January 3, 2014, warrants to search Appellant's residence and person, respectively. Notably, the first aspect of Appellant's argument regarding those warrants hinges on the validity of his **Ashcroft** argument, *supra*, that the video Corporal Goodyear viewed "simply showed circumstances totally consistent with legal activities…." Appellant's Brief at 42. As we have already rejected that claim, all contingent claims are likewise meritless.

Appellant also asserts, however, that these warrants were invalid due to staleness, given that Corporal Goodyear discovered the child pornography video sent from Appellant's computer more than six months before Detective Moran sought the at-issue search warrants.

> In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists *at the time he issues the warrant*. Such a decision may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued.

**Commonwealth v. Shaw**, 281 A.2d 897, 899 (Pa. 1971) (emphasis added).

Appellant argues that the evidence of criminality discovered by Corporal Goodyear became stale because "the items sought to be seized could easily be disposed of and there was no indication in the warrants that the alleged illegal activity had occurred on any date other than June 30, 2013." Appellant's Brief at 44. He further asserts that Detective Moran "did not

provide sufficient information … to establish the alleged criminal acidity was likely to have continued up to the time of the issuance and execution of the search warrants." **Id.**

Appellant's argument, while potentially relevant to many other types of crime, is nevertheless oblivious to the nature of the evidence at issue in a modern investigation into child pornography. Adopting the view of the Third Circuit, this Court has stated: "Age alone … does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence." **Commonwealth v. Gomolekoff**, 910 A.2d 710, 713 (Pa. Super. 2006) (quoting **United States v. Harvey**, 2 F.3d 1318, 1322 (3rd Cir. 1993)) (quotation marks omitted).

In **Gomolekoff**, police in Wichita, Kansas obtained a search warrant based on the discovery of child pornography in multiple emails in November of 2003, thereby discovering evidence that Gomolekoff, a resident of Pennsylvania, was one of the recipients. That information was not forwarded to police in Pennsylvania until June of 2004. In August of 2004, police obtained a search warrant for Gomolekoff's home based on that information, where they discovered child pornography on four of his computers.

Gomolekoff challenged the August 2004 warrant on staleness grounds, but the trial court denied his suppression motion. On appeal, this Court, relying on **Harvey** and similar federal cases, rejected Gomolekoff's argument

that the 9-month gap rendered stale the evidence discovered in November of 2003, based on two factors unique to child pornography cases. We recognized that "pedophiles tend to keep any child pornography for long periods of time[,]" and that "even if the child pornography in question had been deleted …[,] any trained forensic examiner could retrieve the image from [the d]efendant's computer." *Gomolekoff*, 910 A.2d at 714 (citation omitted).

Similarly, here, the 6-month gap between the initial discovery of the evidence of Appellant's possession of child pornography and the issuance of warrants to search Appellant's residence must be weighed against the nature of the crimes at issue and the strong likelihood that even deleted evidence could still be recovered from Appellant's computer equipment. Indeed, the delay in the instant matter was substantially shorter than that involved in *Gomolekoff*. Furthermore, despite the fact that the trial court explicitly denied his staleness claim based on *Gomolekoff*, *see* PTO1 at 9-10, Appellant provides no relevant analysis in his brief of *Gomolekoff*'s implications in this case. As such, we conclude that Appellant's staleness claim is meritless.

Appellant next argues that the evidence discovered in his residence as a result of the January 2, 2014 warrant did not provide a sufficient basis upon which to secure the January 3, 2014 warrant to search his person. We disagree. When searching Appellant's residence, police discovered an empty box for a Toshiba laptop. While serving the warrant, Detective Moran contacted Appellant and discovered that he was out of town. Based on that

evidence, Detective Moran sought the January 3rd warrant, opining in the related affidavit of probable cause that "[d]ue to [Appellant's] being out of town and the probability and ease to transport a laptop computer it is believed [Appellant] more likely than not[,] took that laptop with him for personal use while out of town." Affidavit of Probable Cause, 1/3/14, at 2. Appellant provides no legal analysis as to why this was unreasonable, assuming the validity of the January 2, 2014 warrant, other than to suggest that police had already discovered enough evidence to proceed with a prosecution. **See** Appellant's Brief at 46. Appellant's claim is also unsupported by any relevant legal analysis. Accordingly, we deem it meritless.

In Appellant's final suppression-related claim, he argues that the January 3, 2014 warrant was overbroad and lacked specificity.

> "It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... In addition, the search may not go beyond the scope of the warrant." **Commonwealth v. Eichelberger**, 352 Pa. Super. 507, 513, 508 A.2d 589, 592 (1986), citing Pennsylvania Constitution, Article I, Section 8; Pa.R.Crim.P. 2005(b) and (c); and **Commonwealth v. Searles**, 450 Pa. 384, 302 A.2d 335 (1973). **See also: Commonwealth v. Reese**, 520 Pa. 29, 32, 549 A.2d 909, 910 (1988), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990); **Commonwealth v. Bleigh**, 402 Pa. Super. 169, 174–176, 586 A.2d 450, 453 (1991).

>> The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in

the general "rummaging" banned by the fourth amendment. ***See Marron v. United States***, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927). A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. The officers executing such a warrant will not rummage, but will "cart away all documents." Application of Lafayette Academy, 610 F.2d 1, 3 (1st Cir. 1979). An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

***Commonwealth v. Santner***, 308 Pa. Super. 67, 69–70 n. 2, 454 A.2d 24, 25 n. 2 (1982), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984).

***Commonwealth v. Bagley***, 596 A.2d 811, 814 (Pa. Super. 1991).

In the warrant at issue, Detective Moran sought to seize:

All computer hardware, including, but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data. Any computer processing units, internal and peripheral storage devices, (such as fixed disks, external hard disks, floppy disk drives, and diskettes, tape drives, tapes, and optical storage devices), peripheral input/output devices such as keyboards, printers, scanners, plotters, video display monitors, … and optical readers), and related communication devices such as modems, cables, and connections, recording equipment, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware.

All computer software, including, but not limited to, any digital information interpreted by a computer and any of its related components to direct the way they work. Any software that is stored in electronic, magnetic, optical, or other digital form. Programs and/or applications that run operating systems, word porcessing, graphics or spread sheet programs and utilities, compilers and communications programs.

All computer related documentations consisting of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

All computer passwords and other data security devices designed to restrict access or hide computer software, documentation or data. Any data security devices that may consist of hardware, software, or other programming code.

All documentation of any nature, printed (images/depictions of child pornography), or hand written which may relate to passwords, accomplices or co-conspirators. Any documents that show ownership and/or cohabitation of who resides at the place to be searched and showing ownership of computer hardware, software.

Internet Service accounts, phone accounts/records, web sites and screen names.

All child pornographic images, pictures, videos, or depictions, including those digitally stored.

Any and all videotapes, digital cameras, video cameras, recording tapes, hand held devices (including cell phones), and game consules that store data.

Application for Search Warrant, 1/3/14, at 1-2.

Appellant notes, correctly, that this is the same language used in the January 2, 2014 warrant. Appellant's Brief at 51. Appellant argues that this was overbroad given that Detective Moran was specifically seeking the missing Toshiba laptop and Appellant's iPhone. Yet again, Appellant's argument, although verbose, provides no analysis of existing case law to assist this Court in our examination of this issue, beyond citing some of the relevant, yet boilerplate recitations of the relevant standards. Nor does Appellant directly address the reasoning of the trial court, which stated:

[Appellant]'s assertion that Detective Moran should only have been searching for a Toshiba laptop fails to account for the very real possibility that a person may own more than one laptop or computing device, and may not still have the original packaging that could alert police to its existence. Moreover, Detective Moran's training and experience has taught him that child

- 23 -

pornography can be stored on many types of devices, all of which are fairly easily transportable.

It was not unreasonable for Detective Moran to conclude, based on the evidence already obtained, as well as the facts of the investigation, that [Appellant] could possess on his person various electronic devices as described in the warrant. Detective Moran could not be perfectly certain what items [Appellant] possessed on his person, and therefore, the [c]ourt finds the general descriptions of the items to be searched for was sufficiently particular and need not be limited to a Toshiba laptop.

Pretrial Opinion ("PTO2"), 6/27/16, at 1-2.

We agree with the trial court. The purpose of the investigation was to uncover evidence of child pornography, for which probable cause was already established; it was not a theft investigation seeking a specific stolen item believed to be in Appellant's possession. Therefore, it was reasonable for Detective Moran to identify in the warrant various types of electronic devices that might be used to produce, store, or copy child pornography, as well as devices that could contain an electronic 'paper trail' of such activity. The comprehensiveness of the list of items is a reflection of the proliferation of technology in our society rather than the over breadth of the warrant, as each of the devices listed had the potential to reveal evidence of Appellant's possession or distribution of child pornography. As such, we ascertain no abuse of discretion in the trial court's denial of Appellant's suppression claim related to the January 3, 2014 warrant.

Next, Appellant argues that the trial court erred by failing to disclose the trial judge's personal relationship with the prosecutor prior to Appellant's non-jury trial, and for failing to recuse himself based on that relationship. In his

brief, Appellant details extensive averments concerning the relationship between D.A. Miller and Judge Grine. Appellant's Brief at Appendix C, 22-38. As noted above, although the trial court initially scheduled a hearing to address this matter, that hearing was never held. As such, there is no official record in this case sufficient to permit this Court to address Appellant's disclosure and recusal claims, and there is no explanation offered by the trial court in a Rule 1925(a) statement or other opinion as to why such claims were allowed to go unaddressed until they were denied by operation of law.

Tellingly, in its brief, the Commonwealth does not present any argument in opposition to Appellant's disclosure and recusal claims. Indeed, in response to these claims, the Commonwealth cryptically states that an "impartial tribunal is fundamental to our judicial system," and then proceeds to cite several cases in support of that statement. Commonwealth's Brief at 14. Thus, we ascertain from the Commonwealth's brief that, at a minimum, it believes this issue warrants further investigation.

We have already determined that resentencing is required as we are reversing Appellant's conviction on one count of dissemination. We conclude that the most prudent course of action is, therefore, to allow Appellant to develop his disclosure/recusal claim before the trial court in the first instance, in a post-sentence motion following resentencing. Assuming Appellant pursues that course of action, we direct the trial court to hold a hearing at which evidence may be presented regarding the appearance of bias and/or

partiality stemming from Judge Grine's relationship with D.A. Miller, and to determine if the evidence produced warrants an order granting a new trial.

### *Weight of the Evidence*

In issues II and IV, *supra*, Appellant challenges the weight of the evidence supporting his identity as the perpetrator. We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> > Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> > This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> > > The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the

> judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Instantly, the trial court's failure to file an opinion addressing Appellant's weight-of-the-evidence claim impedes our review of that claim, especially in light of the unique circumstances of this case, where the judge who denied Appellant's weight-of-the-evidence claim was not the judge who tried the case and sat as factfinder. Of particular concern under this standard is whether the credibility determinations that did occur at trial were the result of partiality or bias, in which case the decision to grant or deny Appellant's weight-of-the-evidence claim could be likewise affected. Accordingly, we decline to address Appellant's weight claims until further proceedings are held in the lower court and, in the event that a new trial is not ordered pursuant to Appellant's disclosure/recusal claim, until a trial court opinion addressing Appellant's weight-of-the-evidence claims is filed. If a new trial is granted, Appellant's weight-of-the-evidence will be rendered moot by that remedy.

### *Bail Pending Appeal*

Appellant claims that the trial court abused its discretion by denying his motion for bail pending his appeal. He argues, essentially, that he should have been granted bail pending his appeal given, ostensibly, a high likelihood of success with respect to his claim for a new trial based on Judge Grine's

failure to disclose his relationship with D.A. Miller and, thereafter, his failure to recuse given that relationship. Appellant's Brief at 71.

Yet again, Appellant provides no relevant analysis of existing case law, or even the pertinent statute, to support his claim. Pa.R.Crim.P. 521(B)(1) states that a defendant is entitled to "the same right to bail as before verdict" if the sentence imposed is less than 2 years. Appellant does not fall into this category, as the trial court sentenced him to 8-16 years' incarceration. Appellant's bail pending appeal is instead governed by Rule 521(B)(2), which directs that, for sentences of 2 years or more, "the defendant shall not have the same right to bail as before verdict, but bail may be allowed in the discretion of the judge." However, to this Court's knowledge, there are no statutory or rule-based factors that govern such discretion, including consideration of Appellant's likelihood of success, which is the basis of Appellant's claim.[4] Accordingly, we ascertain no abuse of discretion in this instance.

Finally, Appellant's tenth claim is rendered moot given the relief afforded above.

---

[4] In any event, we are not at all convinced that Appellant's likelihood of success in the most general sense would itself justify bail pending appeal in the context of Rule 521(B)(2), such as the likelihood of resentencing or the granting of a new trial, in the absence of some countervailing consideration of his likelihood of a not-guilty verdict at such a trial. In any event, should Appellant be granted a new trial below, he will be permitted to seek bail like any other pretrial criminal defendant.

Conviction **reversed** in part, **affirmed** in part.  Judgment of sentence **vacated**.  Case **remanded** for resentencing and further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2018